UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| METHODIST HEALTHCARE<br>MEMPHIS HOSPITALS d/b/a LE<br>BONHEUR CHILDREN'S HOSPITAL,<br><br>      Plaintiff,<br><br>v.<br><br>SUNFROG LLC,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)  **Case No. 2:16-cv-02718-JTF-TMP**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Methodist Healthcare Memphis Hospitals d/b/a Le Bonheur Children's Hospital ("Methodist") submits this response to Defendant SunFrog LLC's ("SunFrog's") motion to dismiss.

**Preliminary Statement**

SunFrog's brief is replete with assertions that are completely unsupported by citation to the record and/or are completely false.  For instance, on pages 2-3 of its brief, SunFrog describes how it allegedly conducts business, and yet it improperly provides no citation to the record. More importantly, SunFrog repeatedly misrepresents to the Court that Methodist filed this suit "without notice." (Doc. 19-1, pp. 2, 5-6). SunFrog's entire motion is premised on the notion that "SunFrog could not be held liable for contributory infringement because Plaintiff has failed to provide SunFrog with specific notice of infringing activity occurring on its service."  (*Id.* at 6-7). According to SunFrog, "Plaintiff notified Defendant of alleged infringement occurring on its network on a single occasion in 2014" and "Defendant has not received any correspondence from Plaintiff since 2014." (*Id.* at 14).  This assertion is utterly inaccurate.

Methodist first notified SunFrog's legal department of the infringement by letter dated October 14, 2014.  (Ex. 1).  When the infringement continued, Methodist provided a second notice to SunFrog's legal department on August 26, 2015.  (Ex. 2).  Additionally, Methodist reported the infringement on SunFrog's own "Report An Infringement" web portal.  (Ex. 3).

Unfortunately, the infringement continued, prompting Methodist to send yet another letter to SunFrog's legal department on July 8, 2016, which <u>included a draft of the Complaint</u> in this case.  (Ex. 4).  SunFrog cannot deny receiving this correspondence, because its apparent agent, Jesica Kuhn, acknowledged receipt of the letter on July 11, 2016.  (Ex. 5).  Accordingly, Methodist does not understand how SunFrog can make these representations to the Court, and SunFrog's entire motion rests on a false premise.

## Legal Argument

In considering SunFrog's motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009). To survive SunFrog's motion to dismiss, Methodist's "complaint must contain either direct or inferential allegations respecting all material elements" of the offense. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus.*, 648 F.3d 452, 456-57 (6th Cir. 2011) (citations omitted).

Methodist has alleged three causes of action:  trademark infringement, unfair competition, and unjust enrichment.  When construing the factual allegations set forth in Amended Complaint (Doc. 6) in the light most favorable to Methodist, Methodist appropriately states a claim for all three of these causes of action.  Therefore, the Court should deny SunFrog's motion to dismiss.

I.      **Methodist has alleged actionable trademark infringement and unfair competition claims.**

To state a claim for trademark infringement under 15 U.S.C. § 1114, "a plaintiff must allege facts establishing that (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Similarly, to prove a claim for unfair competition/false designation under 15 U.S.C. § 1125(a)(1)(A), a plaintiff similarly must show: "(1) Ownership of a specific mark; (2) Continuous use of the mark; (3) Establishment of a secondary meaning if the mark is descriptive; and (4) A likelihood of confusion amongst consumers due to the contemporaneous use of the parties' marks in connection with the parties" respective services." *Allard Enters., Inc. v. Advanced Programming Res., Inc.,* 146 F.3d 350, 355 (6th Cir. 1998).

SunFrog does not dispute that Methodist is the registered owner of the LE BONHEUR CHILDREN'S HOSPITAL trademark. (Doc. 6, ¶¶6-7). Nor does SunFrog dispute that Methodist has alleged facts sufficient to show that there is a likelihood of confusion caused by the print set forth on SunFrog's t-shirts. Instead, SunFrog argues that it cannot be deemed to have used Methodist's trademark.

Under the Lanham Act, a person who "uses in commerce" a trademark without authorization in a way that causes potential confusion is subject to liability. 15 U.S.C. §§ 1114(1)(a); 1125(a)(1); *NetJets Inc. v. Intellijet Group, LLC*, 602 F. App'x 242, 244-45 (6th Cir. 2015). The Act broadly defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. In its brief, SunFrog suggests that it really has not used Methodist's trademark and that it merely provides a platform for t-shirt designers to sell their products. (Doc. 19-1, p. 3). According to SunFrog, it is a "service provider that accepts submissions of user-generated content from third parties and fulfills orders for clothing goods

3

based on those submissions." (*Id.* at 12). The Court should reject SunFrog's contention for multiple reasons.

First, SunFrog's assertions of its business operations are not supported by the record. SunFrog's brief neither cites to nor attaches any support for its contentions. SunFrog may not misuse Rule 12(b)(6) as a means to present summary judgment argument with no supporting evidence.

Second, SunFrog wholly ignores that, even under its own depiction of its business practices, SunFrog assumes sole responsibility for manufacturing, marketing, selling, and shipping the t-shirts. It cannot ignore its responsibilities under the Lanham Act by meekly claiming that it may blindly rely on third-party designers. *Compare Ohio St. Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 908, 912 (S.D. Ohio 2014) (similar print-on-demand t-shirt business did not dispute using plaintiff's trademark in commerce).

Third, even if SunFrog could show that it has not directly used Methodist's trademark, it may still be deemed contributorily liable under the Lanham Act. The Supreme Court has recognized that contributory trademark liability may be imposed "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Lab., Inc. v. Ives Lab., Inc.*, 454 U.S. 844, 854 (1982).

Recognizing that "*Inwood* established that liability may be imposed on those who facilitate the infringement," the Sixth Circuit recently considered whether a flea market operator could be liable for contributory trademark infringement. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013). The plaintiff product designer in that case warned the defendant on multiple occasions that counterfeits of the plaintiff's products were being sold by vendors at

4

the defendant's Memphis flea market.  Finding that liability may be imposed on a party who is "'willfully blind' to ongoing investigations," the Sixth Circuit affirmed the district court's determination that the defendant was liable for contributory infringement.  *Id.* (citing *Hard Rock Cafe Licensing Corp. v. Concession Serv., Inc.*, 955 F.2d 1143 (7th Cir. 1992)).

The Sixth Circuit specifically noted that "[o]ther circuits have also applied this reasoning to internet marketplaces, concluding that the marketplace may be liable for contributory trademark infringement if it knew or had reason to know identified vendors were engaging in infringing activity." *Id.* (citing *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163-65 (4th Cir. 2012); *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93, 105-10 (2d Cir. 2010)).  *See also Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1112-13 (N.D. Cal. 2008).  Here, SunFrog claims that its platform is akin to an Internet flea market:  SunFrog provides a marketplace for designers to sell t-shirts over the Internet.  Unlike a flea market, however, SunFrog is the actual manufacturer and direct seller of the goods sold on its website, and it does not make it clear that it is not the designer of the products.  This further weakens SunFrog's futile attempt to distance itself from the goods sold on its website.

Just as the plaintiff in *Coach* repeatedly warned the flea market owner that counterfeit goods were being sold at his flea market in violation of the Lanham Act, Methodist has also repeatedly warned SunFrog that infringing goods have been sold on SunFrog's website. (*See* Ex. 1-4).  As discussed above, SunFrog's representations that it has not been warned about this activity since one occasion in 2014 are simply wrong.  (*Id.*).[1]  "[O]strich-like business practices amount to willful blindness, which is sufficient to show . . . the intent necessary to be a

---

[1] Methodist has explicitly alleged in its Amended Complaint that SunFrog has disregarded "Plaintiff's demands" to cease using Methodist's trademark.  (Doc. 6, ¶12).  If the Court deems it necessary, Methodist can amend its complaint again to reference the specific exhibits filed with this response.  Methodist, however, submits that such an amendment should not be necessary.

contributory infringer." *ADT Serv., AG v. Brady*, 2014 WL 2954722, at *4 (W.D. Tenn. June 30, 2014) (quoting *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007)); *Skreened*, 16 F. Supp. 3d at 917 (noting that "[b]ecause there is no exception in trademark law for infringers who take an ostrich approach to policing their business activities and complying with the law, no reasonable jury could accept Defendants' '*it's too hard/we are the actual victims*' argument"). Not only are Methodist's claims against SunFrog colorable, they are compelling.

Finally, there is no merit to SunFrog's argument that, even if it has used the LE BONHEUR CHILDREN'S HOSPITAL trademark, its use of the mark is "not a trademark use." (Doc. 19-1, p. 10). Relying on Section 1202.03 of the Trademark Manual of Examining Procedure ("TMEP"), SunFrog argues that purely ornamental uses (e.g., placing a name on a t-shirt) does not serve as a trademark use because such a use does not identify and distinguish the seller as the origin or source of the goods in question. SunFrog, however, conveniently omits the following other language in the exact same section of the TMEP differentiating between purely ornamental use and situations analogous to the instant case:

> Ornamental matter that serves as an identifier of a "secondary source" is registrable on the Principal Register. For example, ornamental matter on a T-shirt (e.g., the designation "NEW YORK UNIVERSITY") can convey to the purchasing public the "secondary source" of the T-shirt (rather than the manufacturing source). Thus, even where the T-shirt is distributed by a party other than that identified by the designation, sponsorship or authorization by the identified party is indicated.

TMEP § 1202.03 (Ex. 6 hereto).[2]  In the same way, SunFrog's use of the designation of "LEBONHEUR CHILDREN'S HOSPITAL" on T-shirts distributed by SunFrog conveys to

---

[2] Indeed, courts have routinely found that universities may proceed with trademark infringement claims when a defendant makes use of the university's name on merchandise. *See, e.g., Skreened*, 16 F. Supp. 3d at 922; *Board of Supervisors for La. St. Univ. Agr. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465; *Texas Tech Univ. v. Spiegelberg*, 461 F. Supp. 2d 510 (N.D. Tex. 2006); *Board of Gov. of Univ. of N. Carolina v. Helpingstine*, 715 F. Supp. 167, 173 (M.D. N.C. 1989).

consumers inaccurate sponsorship or authorization by Methodist's Le Bonheur Children's Hospital of SunFrog's apparel in violation of Methodist's trademark rights.

## II. Methodist has alleged an actionable unjust enrichment claim.

In its brief, SunFrog does not present any argument to attempt to show that Methodist has not stated a claim for unjust enrichment. "The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Freeman Indus., Inc. v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier,* 407 S.W.2d 150, 155 (Tenn. 1966)).

Construing the factual allegations in the light most favorable to Methodist, Methodist can readily establish these elements. SunFrog has profited from the use of Methodist's trademark and it would be unjust for SunFrog to profit from use of the mark without having paid any compensation for the benefit.

## Conclusion

For the foregoing reasons, the Court should deny SunFrog's motion to dismiss, or alternatively, afford Methodist leave to amend its complaint.

    Respectfully submitted,

    /s/ David L. Johnson
    David L. Johnson, #18732
    Butler Snow LLP
    *The Pinnacle at Symphony Place*
    150 Third Avenue South, Suite 1600
    Nashville, TN 37201
    Phone: (615) 651-6700
    Fax: (615) 651-6701
    David.johnson@butlersnow.com

    *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Dismiss will be served upon the following counsel of record by the Court's ECF system on this the 2nd day of November, 2016.

| | |
|---|---|
| John Di Giacomo | Eric Misterovich |
| Revision Legal, PLLC | Revision Legal, PLLC |
| 109 E. Front St., Suite 309 | 125 S. Kalamazoo Mall, Suite 203 |
| Traverse City, MI 49683 | Kalamazoo, MI 49007 |
| john@revisionlegal.com | eric@revisionlegal.com |
| Attorney for Defendant | Attorney for Defendant |

                                                    /s/  David L. Johnson
                                                  David L. Johnson

33468680v2